## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SINDI R. TRACEY and MICHAEL L. TRACEY, | ) ) ) | Case No. 3:22-cv-189 |
| Plaintiffs, | ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) ) | |
| ROBERT FABIAN and KELLY FABIAN, | ) ) | |
| Defendants. | ) | |

### <u>MEMORANDUM OPINION</u>

Pending before the Court are three motions: (1) Defendants Robert Fabian ("Mr. Fabian") and Kelly Fabian's ("Mrs. Fabian") (collectively, "Defendants") Motion to Compel Plaintiffs' Discovery Responses, (ECF No. 30); (2) Defendants' Emergency Motion for Extension of Time to Complete Discovery,[1] (ECF No. 32); and (3) Plaintiffs Sindi Tracey ("Mrs. Tracy") and Michael Tracey's ("Mr. Tracey") (collectively, "Plaintiffs") Motion to Compel Production of Responses to Requests for Documents, (ECF No. 36).

Plaintiffs filed a response to Defendants' Motion to Compel, (ECF No. 31), as well as a response to Defendants' Emergency Motion for Extension of Time, (ECF No. 33). And Defendants filed a brief in support of their Motion to Compel and their Emergency Motion for Extension of Time. (ECF No. 40). Moreover, the Court held oral argument, during which the parties argued

---

[1] The Court notes that, in the Defendants' Motion, they also requested oral argument on their Motion to Compel Plaintiffs' Discovery Responses. (ECF No. 32). The Court granted the Motion insofar as it sought oral argument, (ECF No. 34), but Defendants' ultimate request to extend discovery deadlines remains outstanding.

each of the three pending Motions. (ECF Nos. 38, 39, 43). Accordingly, each Motion is ripe for disposition.

For the reasons that follow, the Court will: (1) **GRANT IN PART** and **DENY IN PART** Defendants' Motion to Compel Plaintiffs' Discovery Responses at ECF No. 30; (2) **GRANT IN PART** and **DENY IN PART** Defendants' Emergency Motion for Extension of Time to Complete Discovery at ECF No. 32; and (3) **GRANT IN PART** and **DENY IN PART** Plaintiffs' Motion to Compel Production of Responses to Requests for Documents at ECF No. 36.

## I.      Background

This case arises from Plaintiffs' attempt to purchase a home, then-owned by Defendants, located at 1621 Outer Drive, Somerset County, Pennsylvania. (ECF No. 1 ¶ 4). In June 2022, Plaintiffs entered into an Agreement of Sale with Defendants for the home. (*Id.* ¶ 6).

Shortly after the Agreement of Sale was executed, Plaintiffs visited the home, at which time Mrs. Tracey tripped and fell down the stairs. (*Id.* ¶ 7). Mrs. Tracey alleges that she suffered serious injury, and that this injury was exacerbated when Mr. Fabian, a chiropractor, attempted to manipulate her injured knee without her consent. (*Id.* ¶¶ 7–8).

Three days after Mrs. Tracey's fall, Plaintiffs notified Defendants that they were terminating the Agreement of Sale—in part due to an alleged defect in the stairs Plaintiffs claim caused Mrs. Tracey's fall. (*Id.* ¶¶ 23–24). Plaintiffs also alleged the home contained other defects, including faulty air conditioning. (*Id.* ¶ 16). Moreover, Plaintiffs state that at the time they notified Defendants that they were terminating the Agreement of Sale, they had additional time within which to conduct a home inspection and subsequently have Defendants repay their $50,000 purchase deposit. (*Id.* ¶ 25).

But, according to Plaintiffs, Defendants waited until after the inspection period passed to notify Plaintiffs that their termination of the Agreement of Sale was deemed defective because they never conducted a proper home inspection. (*Id.* ¶ 26). Plaintiffs contend that if Defendants had responded to them in a timely manner, they could have conducted an inspection and exercised their contractual right to terminate the Agreement of Sale and recoup their purchase deposit. (*Id.* ¶ 27).

Accordingly, on October 20, 2022, Plaintiffs filed a Complaint against Defendants in the United States District Court for the Western District of Pennsylvania. (*See id.*). Therein, Plaintiffs assert four claims against Defendants based upon the events just recounted.

First, Plaintiffs bring a negligence claim against Defendants, alleging they negligently failed to properly maintain the stairs, which caused Mrs. Tracey's injuries. (*Id.* ¶ 9). Moreover, and of particular importance with respect to the pending Motions, Plaintiffs allege that Defendants' negligence caused Plaintiffs' business—Physician Financial Services, Inc.—to lose profits.[2] (*Id.* ¶ 11).

Second, Plaintiffs bring a Loss of Consortium claim against Defendants on behalf of Mr. Tracey, alleging that Mrs. Tracey's injuries from the fall deprived him of his wife's companionship. (*Id.* ¶ 12).

---

[2] The Court notes that Plaintiffs' Complaint states that Mrs. Tracey "has in the past and may in the future lose wages and her earning capacity may be diminished[.]" (ECF No. 1 ¶ 11). The Complaint does not specifically mention lost "profits" to Plaintiffs' business. However, at oral argument, Defendants repeatedly indicated that Plaintiffs were seeking lost profit damages in the amount of $500,000, (*See* ECF No. 43 at 4, 5, 12), and Plaintiffs did not dispute this assertion. (*See id.* at 26).

Third, Plaintiffs allege that Defendants breached the Pennsylvania Real Estate Seller Disclosure Law by failing to inform Plaintiffs of several alleged defects present in the home. (*Id.* ¶¶ 13–20).

Fourth, and finally, Plaintiffs bring a Breach of Contract claim against Defendants. (*Id.* ¶¶ 21–32). To support that claim, Plaintiffs contend that they are entitled to repayment of their $50,000 purchase deposit considering Defendants' delay in responding to Plaintiffs' notice of termination. (*Id.* ¶ 27–28). In the alternative, Plaintiffs allege that it was impossible for them to comply with the inspection requirements due to Mrs. Tracey's injuries. (*Id.* ¶ 31).

On December 21, 2022, the Court issued an Initial Scheduling Order setting the fact discovery deadline for June 1, 2023, and the expert discovery deadline for November 15, 2023. (ECF No. 15). The Initial Scheduling Order also scheduled a post-discovery status conference for July 7, 2023. (*Id.*).

At the post-discovery status conference, both parties orally moved for the Court to continue the deadlines for completing discovery to the end of September 2023. (ECF No. 24). The Court granted that motion and set the revised discovery deadline for September 30, 2023. (ECF No. 25).

Shortly before the close of discovery, on September 26, 2023, Defendants filed their Motion to Compel Plaintiffs' Discovery Responses. (ECF No. 30). Specifically, Defendants seek to compel Plaintiffs' response to their Requests for Production of Documents "which could verify or would otherwise be related to the [P]laintiffs' business income loss claim." (*Id.* at 1). Defendants made six specific requests for documents, which the Court will discuss in more detail below, and Plaintiffs objected to each request. (ECF No. 30-2). Thus, Defendants ask that the Court order

Plaintiffs to provide full and complete responses to Defendants' discovery requests within thirty days. (ECF No. 30 ¶ 9).

Plaintiffs responded to Defendants' Motion to Compel the next day, asserting specific objections to each of Defendants' requests for documents. (ECF No. 31). Plaintiffs also explained that they had already provided Defendants with several batches of documents they allege are sufficiently responsive to Defendants' requests. (*Id.*).

Then, on October 19, 2023—nineteen days after the close of discovery—Defendants filed their Emergency Motion for Extension of Time to Complete Discovery. (ECF No. 32). In that Motion, Defendants offer two reasons why extending the discovery deadlines is warranted. First, Defendants claim that without the documents they seek to compel from Plaintiffs regarding the lost profits claim, they will be "grievously prejudiced in their defense in this matter." (*Id.* ¶ 6).

Second, Defendants claim that they "recently learned of the existence of Russ Harned [("Mr. Harned")], a former employee of the [P]laintiffs, who has relevant information regarding the status of [P]laintiffs' business prior to [P]laintiff's fall." (*Id.* ¶ 7). The Court will address the specifics of Mr. Harned's potential testimony below, but Defendants allege that the deposition is "crucial to [their] defense of the [P]laintiffs' claims in this matter." (*Id.* ¶ 9). For both reasons just explained, Defendants request that the Court extend all discovery deadlines by ninety days. (*Id.* ¶ 13).

Plaintiffs responded to Defendants' Emergency Motion for Extension of Time the next day, arguing that they have provided Defendants with sufficient financial documents to analyze Plaintiffs' lost income claim. (ECF No. 33). Plaintiffs also contend that deposing Mr. Harned is

unnecessary because Mr. Harned has not worked for Plaintiffs' in approximately five-and-a-half years, so he "would have no meaningful knowledge of the Plaintiffs' business." (*Id.* ¶ 9).

On October 31, 2023, Plaintiffs filed their own Motion to Compel Production of Responses to Requests for Documents. (ECF No. 36). In their Motion, Plaintiffs claim they served two Requests for Documents or Things upon Defendants, and that Defendants failed to reply to either. (*Id.* ¶¶ 2, 4, 6). Accordingly, Plaintiffs request that the Court enter an Order compelling Defendants to offer responses to Plaintiffs' discovery requests within five days or face further sanctions. (*Id.* at 2).

Per Defendants' request, (ECF No. 32 ¶ 14), the Court held oral argument regarding the three pending Motions on November 3, 2023. (ECF No. 39).[3] As will be explained further below, the parties resolved several issues amicably at oral argument. However, several issues stemming from the three pending discovery Motions remain unresolved and therefore require the Court's resolution. The Court will address each issue, along with the parties' arguments, in turn.

## II.     Legal Standard

Federal Rule of Civil Procedure 26 provides the general framework for discovery in federal civil litigation.  Parties may obtain discovery of any matter that is both nonprivileged and relevant to a party's claim or defense, so long as it is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  In determining whether discovery is proportional to the needs of the case, courts must consider "the importance of the issues at stake in the action, the amount in

---

[3] The Court notes that Defendants' initial request for oral argument was only with respect to their Motion to Compel Plaintiff's Discovery Responses and their Emergency Motion for Extension of Time to Complete Discovery. (ECF No. 32). However, when Plaintiffs filed their Motion to Compel, the Court issued an Order stating that it would hear oral argument on that pending Motion, along with Defendants' pending Motions. (ECF No. 38).

controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(l).

Rule 37 provides the mechanism to compel discovery from a person or party who refuses to provide discovery. *See* Fed. R. Civ. P. 37. The party moving to compel discovery under Rule 37 bears the initial burden of proving the relevance of the material requested. *See Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001) (citations omitted). If the movant meets this initial burden, the burden shifts to the person resisting discovery to establish that discovery of the material requested is inappropriate. *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) (citation omitted). The person resisting discovery must explain with specificity why discovery is inappropriate; a simple response that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient. *See Josephs v. Harris Corp.*, 677 F.2d 985, 991–92 (3d Cir. 1982).

"If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses of the motion." Fed. R. Civ. P. 37(a)(5)(C).

## III.    Discussion

### A.    Defendants' Motion to Compel Plaintiffs' Discovery Responses at ECF No. 30

As previously noted, Defendants seek to compel the production of documents they requested from Plaintiffs, alleging that those documents are necessary to evaluate Plaintiffs' lost profits claim.

Defendants state that on July 3, 2023, they served a set of "Requests for Production of Documents" to Plaintiffs, which sought the following six categories of documents:

1. Request No. 1: "Produce copies of any and all bank statements for any bank account maintained by Plaintiffs (whether held in the name of Plaintiffs, or in the name of another person) from 2011 through the present." (ECF No. 30-1 at 3).

2. Request No. 2: "Produce any and all income statements, financial statements, balance sheets, profit/loss statements, reports of expenditures, books of account, loan applications and/or similar documents setting forth the financial condition of Plaintiffs since its formation to the present." (*Id.* at 4).

3. Request No. 3: "Produce any and all documents relating to all liabilities of Plaintiffs, including but not limited to all records of accounts receivable and accounts payable, promissory notes, all contracts involving Plaintiffs, invoices, statements of account or other memoranda." (*Id.*)

4. Request No. 4: "Produce any and all documents setting forth all assets owned by Plaintiffs from its formation to the present, including but not limited to bills of sale, wire transfer receipts, checks or invoices." (*Id.*)

5. Request No. 5: "Produce any and all documents relating to the transfer of any assets or monies from Plaintiffs to any other person or entity from its formation to the present." (*Id.*)

6. Request No. 6: "Produce all personal tax returns for Plaintiffs as well as all tax returns for Physician Financial Services, Inc. for the years 2011 to the present." (*Id.* at 5).

Plaintiffs responded to these requests on July 11, 2023, asserting the same objection to each request: "Objection. Request No. [] is overly broad and unduly burdensome. Additionally, said request seeks information which is irrelevant and vexatious." (ECF No. 30 ¶ 5; ECF No. 30-2).

## 1.    Impact of Oral Argument

In Plaintiffs' response to Defendants' Motion to Compel, and at oral argument, Plaintiffs specifically objected to the breadth of documents sought by Defendants. On that point, Plaintiffs contend that because several of Defendants' requests seek documents from the formation of

Plaintiffs' business forward—and Plaintiffs' business is twenty-seven years old—those requests are unduly burdensome. (ECF No. 31 at 2; ECF No. 43 at 8).

However, at oral argument, counsel for Plaintiff explained that he did not believe that Plaintiffs had any documents "beyond seven years[.]" (ECF No. 43 at 14). Based on that representation, counsel for Defendants stated: "If [Plaintiffs] only have seven years" worth of documents, "then I'll take seven years." (*Id.* at 30). Accordingly, while some of Defendants' original requests for documents went back to the formation of Plaintiffs' business, to 2011, or were not limited by any timeframe, the Court will treat each request as seeking documents for the past seven years in deciding Defendants' Motion.

Moreover, in their responsive pleadings and at oral argument, Plaintiffs stated that they have already provided Defendants with the following financial documents, dating back five years: (1) business income tax returns, (2) a profit/loss report, and (3) both Plaintiffs' W-2 forms. (ECF No. 31 at 1–2; ECF No. 43 at 7). The profit and loss report Plaintiffs provided Defendants was prepared by a forensic accountant upon counsel for Defendants' request. (ECF No. 30 at 2; ECF No. 31-1).

### 2.    Parties' Arguments

Defendants argue, generally, that the documents they seek are "related to determining the veracity of [P]laintiffs' assertions regarding business income loss[,]" and they emphasize that Plaintiffs are seeking at least $500,000 in lost income. (ECF No. 30 at 2).

At oral argument, Defendants also took aim at the profit and loss *report* Plaintiffs provided (seemingly) in lieu of the profit and loss *statements* Defendants requested. Defendants explained that because the profit and loss report was "self-generated" and "produced for the purposes of

this litigation[,]" not "in the course of business[,]" Defendants are unable to substantiate the report's contents. (ECF No. 43 at 4–5).

Defendants also explained that their forensic accountant "needs" the information contained in the requested documents to draft a report and discern whether there is any basis for Plaintiff's lost profits claim. (*Id.*). Moreover, with respect to the timeframe of the requested documents, Defendants argued that they "need enough data so that the results that any expert would come up with would be statistically significant." (*Id.* at 7).

Plaintiffs, for their part, primarily contend that the documents they have already provided to Defendants—the business income tax forms, profit and loss report, and each Plaintiffs' W-2s, all dating back five years—"are enough to produce an expert report." (*Id.* at 7–8). Indeed, Plaintiffs explained that their economic expert produced a report based on the same documents Plaintiffs provided to Defendants. (*Id.*). And while Plaintiffs did not explicitly object to Defendants' modified request that Plaintiffs produce documents dating back seven years at oral argument, Plaintiffs argued that the documents already produced "reflect[] what [they] reflect[]." (*Id.* at 41–42).

### 3.   Analysis

As previously noted, Defendants' Motion to Compel implicates six specific requests for sets of documents. The Court will address each request in turn.

#### a.   Request No. 1

Defendants first request seeks "copies of any and all bank statement for *any* bank account maintained by Plaintiffs (whether held in the name of Plaintiffs, or in the name of another person)[,]" (ECF No. 30-1 at 2) (emphasis added), now going back seven years in light of oral

argument. Plaintiffs argue that this request is "not related to loss of income from their business" and "unduly burdensome and intrusive." (ECF No. 31 at 1–2). The Court agrees with Plaintiffs.

The Court finds that this request, as stated, is overbroad. The central issue Defendants focused on with respect to these requests for documents was Plaintiffs' allegations of lost business profits. (ECF No. 43 at 4). If the purpose of this request is to obtain information regarding lost business profits, the financial records sought elsewhere in Defendants requests pertaining to the business's financial documents will be sufficient to assess the lost profits claim.

Based on the arguments presented by Defendants, the Court cannot see any meaningful relevance to or propriety of requiring Plaintiffs to produce the entirety of their bank statements for the last seven years. And Defendants have made little argument as to why this particular request is appropriate. Accordingly, the Court will deny Defendants' Motion to Compel with respect to Request No. 1. *See, e.g., Veritext/Pa Reporting Co., LLC v. E-Reporting Stenographic Affiliates of Pa., Inc.,* No. 03-cv-6533, 2004 WL 27416141, at *3–4 (E.D. Pa. Nov. 23, 2004) (denying a motion to compel bank statements where "the purpose of th[e] request [was] to obtain information regarding alleged damages," because the separately requested and produced "documents concerning the financial condition" of the business at issue were sufficient).

### b. Request No. 2

Defendants' second request seeks "any and all income statements, financial statements, balance sheets, profit/loss statements, reports of expenditures, books of account, loan applications and/or similar documents setting forth the financial condition" of Plaintiffs' business, now going back seven years. (ECF No. 30-2 at 3). The Court notes that Plaintiffs argue they have already produced a profit and less report encompassing the last five years. (ECF No. 43 at 7). But

Defendants take issue with the fact that this report was produced for the purposes of this litigation, and not in the course of business. The Court agrees with Defendants' concerns.

Plaintiffs attached as an Exhibit to their Response to Defendants' Motion to Compel the "economic Loss Report" they contend satisfies Defendants' request. (ECF No. 31-1). This Report was prepared by a financial expert at Plaintiffs' request, and while it cites "Profit & Loss Statements[,]" it does not contain the statements themselves, which Defendants specifically requested. (ECF No. 31-1 at 5).[4] The Court finds that Defendants should be given the opportunity, like the Plaintiffs' expert who penned the report, to review the profit and loss statements themselves—not a report summarizing them. Accordingly, to the extent Plaintiffs are in possession of profit and loss statements dating back seven years that were produced in the course of business, Plaintiffs shall produce them.

With respect to the remaining portions of Defendants' second request, the Court finds that the following documents requested are both relevant and proportional: (1) income statements, (2) financial statements, and (3) balance sheets. Defendants clarified at oral argument that Plaintiffs had produced "business income going back to 2018[.]" (ECF No. 43 at 4). In addition, Plaintiffs shall produce to Defendants income statements dating back seven years, to the extent Plaintiffs are in possession of such documents. *See, e.g., Podium Corp. v. Chekkit Geolocation Servs.*, No. 2:20-

---

[4] The Report also indicates that the expert only reviewed "Profit & Loss Statements" from "August 2022 to July 2023[.]" (ECF No. 31-1 at 4). Plaintiffs appeared to represent at oral argument that they provided Defendants with (1) the underlying profit and loss statements that formed the basis of the Report, and/or (2) profit and loss statements dating back five years. (ECF No. 43 at 27). To the extent Plaintiffs have provided such documents to Defendants, as will be further explained in text, Plaintiffs are still directed to produce profit and loss statements dating back seven years, to the extent they are able.

cv-00352, 2022 WL 1773016, at *5–6 (D. Utah June 1, 2022) (granting a motion to compel a business's income statements where lost profits were alleged as damages).

Plaintiffs shall also produce to Defendants financial statements and balance sheets regarding Plaintiffs' business dating back seven years. The Court finds that such documents are relevant in light of Plaintiffs' assertion of lost profits and will allow Defendants to independently analyze Plaintiffs' claim. *See, e.g., Champion Foodservice, LLC v. Vista Food Exchange, Inc.*, No. 1:13-cv-1195, 2016 WL 4468000, at *11 (N.D. Ohio Aug. 23, 2016) (explaining that the "failure to produce" a business's "financial statements" prevented the defendant "from being able to independently analyze the plaintiff's lost profit claims[,]" and therefore granting a motion to compel financial statements); *Jay Vending Co. v. Dearing*, No. WDQ-14-3610, 2015 U.S. Dist. LEXIS 156480, at *9 (D. Md. Nov. 19, 2015) ("Because Plaintiff's balance sheets are relevant to Plaintiff's alleged damages of lost profits, . . . Plaintiff is directed to provide Defendants with its balance sheets[.]").

Finally, the Court will deny Defendants' motion to compel with respect to their request for "reports of expenditures, books of account, loan applications and/or similar documents[,]" (ECF No. 30-1 at 4), because Defendants have failed to explain the relevance of those documents to Plaintiffs' lost profits claim. *See Podium Corp.*, 2022 WL 1773016 at *6 (denying in part a motion to compel financial documents, including cash flow statements, "because Defendants have not articulated how the other categories are relevant to Podium's claim of lost profits").

### c.   Request Nos. 3 and 4

Defendants' third and fourth requests work in tandem. The third request seeks "all documents relating to all liabilities of Plaintiffs[,]" while the fourth request pursues "any and all

documents setting forth all assets owned by Plaintiffs[.]" (ECF No. 30-1 at 4). Neither party has launched specific arguments geared towards these requests, save the Defendants' general assertion of entitlement to them.

In short, the Court finds that the financial documents already produced by Plaintiffs— along with the documents Plaintiffs shall produce in accordance with this Opinion and accompanying Order—render Defendants' third and fourth requests duplicative. *See* Fed. R. Civ. P. 26(b)(C)(i) (explaining that a court must limit the extent of discovery if it determines that "the discovery sought is unreasonable cumulative or duplicative").

For example, the Court above granted Defendants' Motion to Compel with respect to Plaintiffs' balance sheets. As courts have recognized, a balance sheet, by definition, is a "[f]inancial statement that . . . consists of three major sections: assets [], liabilities [], and the owners' equity." *Carolina Waterworks v. Taylor Made Group, LLC*, No. 2:12-CV-02568, 2013 WL 4018678, at *9 (D. S.C. Aug. 6, 2013). Thus, Plaintiffs' balance sheets will adequately reflect both the assets and liabilities of Plaintiffs' business, which will be sufficient to allow Defendants to analyze Plaintiffs' lost profit claim.

The same can be said for Plaintiffs' business tax returns, which have already been partially produced and will be further addressed below. *See Dawson Farms, LLC v. BASF Corp.*, No. 06-cv-0737, 2007 WL 519476, at *3 (W.D. La. Feb. 15, 2007) (recounting a Certified Public Accountant's argument in support of a motion to compel a business's tax returns, where lost profits were alleged, that such tax returns provide information with respect to "assets owned and liabilities owed for the year of loss, years prior to the loss, and if available, years subsequent to the loss").

Accordingly, the Court will deny Defendants' Motion to Compel with respect to the third and fourth requests for documents.[5]

### d.   Request No. 5

Defendants' fifth request seeks "any and all documents relating to the transfer of any assets or monies from Plaintiffs to any other person or entity" dating back seven years. (ECF No. 30-1 at 4). Again, Defendants make little argument—in their briefing or at all oral argument—with respect to this specific request.

Based on the arguments presented by Defendants, the Court cannot find that the specific documents requested are either relevant or important, especially in light of the financial documents Plaintiffs have already provided and those they are instructed to provide in this Opinion and accompanying Order. Because "Defendants have not articulated how" this category of documents is "relevant to [Plaintiffs'] claim of lost profits[,]" the Court will deny Defendants' Motion to Compel with respect to the fifth request for documents. *Podium Corp.*, 2022 WL 1773016 at *6.

### e.   Request No. 6

Finally, Defendants' sixth request seeks "all personal tax returns for Plaintiffs as well as all tax returns for Physician Financial Service, Inc." dating back seven years. (ECF No. 30-1 at 5). Plaintiffs represented at oral argument that they have already provided Defendants with five

---

[5] The Court notes that, in denying these requests, its reading of Defendants' third and fourth requests leads it to conclude that Defendants are only seeking documents related to Plaintiffs' business. (*See, e.g.*, ECF No. 30-1 at 4) (seeking documents related to "all assets owned by the Plaintiffs from *its formation to the present*"). Insofar as Defendants intended to seek personal information from Plaintiffs in these requests, the Court stresses that it presently denies the Motion to Compel with respect to Defendants' third and fourth requests without prejudice.

years of business tax returns. (ECF No. 43 at 27). In addition, Plaintiffs shall produce to Defendants all business tax returns going back seven years, due to Defendants' modified request at oral argument in light of Plaintiffs' acknowledgement that the business may possess documents going back that length of time.

With respect to Defendants' request for Plaintiffs' personal tax returns, Plaintiffs argue that those documents are "not discoverable." (ECF No. 33 at 4). Moreover, Plaintiffs allege that their "personal tax returns could contain information about things well beyond the scope of this lawsuit such as investment income, child support, personal loans, real estate holdings and a myriad of other matters which have nothing to do with this lawsuit." (ECF No. 31 at 3–4).

The Third Circuit has recognized the need to balance several factors when an individual's tax returns are sought through discovery, including the party's "need for the information, its materiality, and its relevance," weighed against the opposing party's important privacy interest and the fact that "public policy favors the non-disclosure of tax returns." *De Masi v. Weiss*, 669 F.2d 114, 119 (3d Cir. 1982).

Here, the Court recognizes Plaintiffs' arguments that implicate both their privacy interest in their tax returns and their view that such documents, on the whole, lack relevance. But the Court finds that these interests are outweighed when Defendants' need for the information, its materiality, and its relevance are considered.

"Where the information in a plaintiff's tax returns is relevant to damages, personal tax returns are discoverable." *Baillargeon v. CSX Transp., Inc.*, No. 3:19-cv-30135, 2022 WL 1104588, at *10 (D. Mass. Apr. 13, 2022). Here, oral argument revealed that Plaintiffs are seeking a large sum of damages in the form of lost business profits. (ECF No. 43 at 4). Courts have recognized the

importance of personal tax returns when lost profits are alleged by a plaintiff in similar circumstances to those present in this case, because a defendant "is entitled to discover whether [a plaintiff] earned any income from outside the company and whether [a plaintiff's] ability to earn such income was affected by the accident[,] as that would be probative of his alleged incapacitation." *Driscoll v. McCann*, No. 19-cv-12302, 2020 WL 5983272, at *13 (D. Mass. Oct. 8, 2020); *see also Fields v. General Motors Corp.*, No. 94 C 4066, 1996 WL 14040, at *3–4 (N.D. Ill. Jan. 14, 1996) (granting a motion to compel production of the plaintiff's tax returns where the plaintiff's claims for lost profits placed in issue their financial injury and whether they mitigated that injury, and thus rendered their tax returns discoverable).

Moreover, Plaintiffs not only allege that they lost profits, but they also allege in their Complaint that Mrs. Tracey "has in the past and may in the future lose wages[.]" (ECF No. 1 at 4). This only bolsters the Court's conclusion that Plaintiffs' personal tax returns are discoverable in this case. *See Shneck v. IBM*, No. 92-cv-4370, 1993 WL 765638, at *21–22 (D. N.J. July 26, 1993) (granting a motion to compel the plaintiffs' tax returns and reasoning that "[b]ecause the Plaintiffs' complaint contains a claim of lost wages, records reflecting income are clearly relevant"); *Dawson v. Ocean Twp.*, No. 09-cv-6274, 2011 WL 890692, at *70–71 (D. N.J. Mar. 14, 2011) (directing a plaintiff to produce individual tax returns in light of a "claim for lost wages and lost economic opportunity").

Finally, the Third Circuit—along with most other federal courts—have also considered whether the information sought through compelling a party's tax returns can otherwise be reasonably obtained. *De Masi*, 669 F.2d at 120–21. Here, the record does not reflect that Plaintiffs have provided Defendants with discovery that would reflect the extent of the lost wages Plaintiffs

claim. Nor has the Court, in this Opinion and accompanying Order thus far, directed Plaintiffs to produce such documents. And Plaintiff has not pointed the Court to any other avenue through which Defendants can independently assess Plaintiffs' lost wages claim. Thus, the Court cannot conclude that Defendants can reasonably obtain such information without Plaintiffs' tax returns. *See, e.g., Casanola v. Delta Mach. & Ironworks, LLC*, No. 19-cv-300, 2021 WL 41078, at *5 (M.D. La. Jan. 5, 2021) ("Defendant has shown a compelling need for Plaintiff's tax returns because he has not produced any other documents relating to the wages he has earned[.]").

"However, production of these documents need not be overly intrusive." *Williams v. Corr. Med. Servs.*, No. 06-cv-6243, 2009 WL 10690508, at *13 (D. N.J. Jan. 30, 2009). And Plaintiffs make a salient argument as to the relevance of the *entirety* of their individual tax returns, which, as they contend, would likely contain information that is wholly irrelevant to the claims at issue in this case. Therefore, Plaintiffs shall produce their personal tax returns, but they shall do so in a redacted form showing only items relating to: (1) wage and salary income, and (2) any other information relevant to Plaintiffs' business.[6] *See id.* at *13–14 (instructing the producing party to similarly redact their personal tax returns where lost wages were at issue).

Accordingly, because Defendants' need for the information, its materiality, and its relevance outweigh Plaintiffs' privacy interest and public policy considerations, the Court will grant Defendants' Motion to Compel with respect to the sixth request for documents, and

---

[6] Because the Court has instructed Plaintiffs to redact their personal tax returns, the Court denies in part Defendants' request for "all personal tax returns for Plaintiffs[.]" (ECF No. 30-1 at 5). In taking this step, the Court notes that it understands Defendants' request for Plaintiffs' personal tax returns to be launched with an eye towards Plaintiffs' allegations of lost profits or wages. To the extent Defendants' request is any broader—or seeks the entirety of Plaintiffs' personal tax returns for a relevant purpose unrelated to Plaintiffs' allegations of lost profits or wages—the Court stresses that its partial denial of Defendants' sixth request is without prejudice.

Plaintiffs shall produce their personal tax returns dating back seven years in redacted form, to the extent they are able.

### B.   Defendant's Emergency Motion for Extension of Time to Complete Discovery at ECF No. 32

As the Court noted above, Defendants' Emergency Motion for Extension of Time to Complete Discovery launches two arguments: (1) Defendants' pending Motion to Compel Plaintiffs' Discovery Responses warrants an extension of the expert discovery deadline, and (2) Defendants' desire to depose Mr. Harned, a former employee of Plaintiffs, warrants an extension of the fact discovery deadline. The Court addresses each argument in turn.

#### 1.   Defendants' Request to Extend the Expert Discovery Deadline in Light of Their Motion to Compel at ECF No. 30

In their brief in support of their Motion, Defendants explain that extending the expert discovery deadline is essential because Defendants "need more time in order for their forensic accountant to review the produced documents in order to draft a report." (ECF No. 40 at 2). Defendants request an extension of at least ninety days and do not oppose extending Plaintiffs' expert discovery deadline as well, in the event Plaintiffs wish to file a supplemental report. (*Id.*).

Considering the Court's partial grant of Defendants' Motion to Compel above, which would inform the parties' expert reports, the Court will grant Defendants' accompanying request to extend the expert discovery deadline—for both Plaintiffs[7] and Defendants—by ninety days.[8]

---

[7] As Defendants eluded to at oral argument, Plaintiffs are free to file a supplemental expert report incorporating the information contained in the documents compelled by this Court's order, if they so choose.

[8] The Court notes that to the extent extending the fact discovery deadline would require a showing of good cause, as discussed further below, *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010), Defendants have satisfied this standard. Defendants exercised due diligence in seeking the financial documents requested, as they served Plaintiffs with requests for those documents within the discovery

2.      **Defendants' Request to Extend the Fact Discovery Deadline to Depose Mr. Harned**

a.      **Parties' Arguments**

Defendants argue that the Court should extend the fact discovery deadline so Defendants can depose Mr. Harned. According to Defendants, Mr. Harned "approached" them shortly after discovery closed, and they "believe Mr. Harned is prepared to testify that many, if not all, of the clients Mrs. Tracey claims she lost as a result of the fall had already left her business by the year 2018." (ECF No. 43 at 6; ECF No. 40 at 2). At oral argument, Defendants clarified that they believe Mr. Harned's testimony would undercut Mrs. Tracey's deposition testimony that she had lost a number of clients as a result of her fall and resulting injuries. (ECF No. 43 at 11–12).

Plaintiffs, on the other hand, argue that because Mr. Harned has not worked for Plaintiffs since 2018, and Mrs. Tracey's fall occurred in 2022, Mr. Harned's testimony would be unhelpful and irrelevant. (ECF No. 43 at 9). Moreover, Plaintiffs allege that "any information that [Mr. Harned] might have about clients and whether they were lost or they remained" with Plaintiffs' business "are all covered by the business" documents Plaintiffs provided to Defendants. (*Id.*).

b.      **Analysis**

At its core, Defendants' Motion—filed nineteen days after the close of discovery—seeks to modify the Court's previous scheduling order setting the discovery deadlines for September 30, 2023.

---

period. *Id.*; (ECF No. 30 ¶ 3). And Defendants' non-receipt of these documents was due to circumstances beyond their control, as Plaintiffs initially objected to the document requests, thus necessitating Defendants' Motion to Compel. *Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.*, No. 09-cv-236, 2010 WL 1726829, at *10 (W.D. Pa. Apr. 28, 2010); (ECF No. 30-2).

To modify a scheduling order, a party must demonstrate "good cause" pursuant to Federal Rule of Civil Procedure 16(b)(4). This "good cause" inquiry "focuses on the moving party's burden to show due diligence." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). In the context of a party's request to extend deadlines, courts have defined "good cause" to include "circumstances beyond the [party's] control[.]" *Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.*, No. 09-cv-236, 2010 WL 1726829, at *10 (W.D. Pa. Apr. 28, 2010).

Notably, "the 'good cause' standard is not a low threshold." *In re Paulsboro Derailment Cases*, No. 12-cv-7747, 2015 WL 6163951, at *1 (D. N.J. Apr. 23, 2014). The stringency of the good cause standard is justified because "scheduling orders are at the heart of case management[,]" and their "utility w[ould] be severely impaired" if they were disregarded "without a specific showing of good cause." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986). And, in undertaking this analysis, the Court "is afforded wide discretion in managing its docket and discovery." *Drippie v. Tobelinski*, 604 F.3d 778, 783 (3d Cir. 2010).

Here, the Court finds that Defendants have failed to show good cause. The "focus[]" of the Court's good cause inquiry is whether Defendants have "show[n] due diligence" in attempting to depose Mr. Harned. *Race Tires Am.*, 614 F.3d at 84. As previously noted, Defendants represented that Mr. Harned "approached" them after the close of discovery. (ECF No. 43 at 6). The fact that Mr. Harned himself reached out to Defendants past the discovery deadline does not indicate that Defendants exercised due diligence in discovering Mr. Harned. And Defendants have offered the Court no other facts indicating due diligence on this score.[9]

---

[9] Relatedly, and not necessarily dispositive to the Court's in-text good cause analysis, Defendants have not presented any facts that would suggest that their inability to depose Mr. Harned within the discovery period was due to "circumstances beyond the[ir] control[.]" *Partners Coffee Co.*, 2010 WL 1726829 at *10.

"Mere failure on the part of counsel to proceed promptly with the normal process of discovery . . . should not be considered good cause." *DAG Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 105 (D.D.C. 2005). Accordingly, the Court concludes that Defendants have failed to satisfy the good cause standard required to extend the fact discovery deadline to depose Mr. Harned. *See, e.g., Davis v. Twp. of Paulsboro*, No. 02-cv-3559, 2005 WL 8174847, at *5 (D. N.J. Oct. 17, 2005) (finding a lack of good cause and refusing to extend a discovery deadline where counsel failed "to set forth any diligent efforts he had made to comply with the deadline imposed by the . . . Scheduling Order, or reasons . . . [that] prevented such compliance").

Federal Rule of Civil Procedure 26 likewise supports the Court's ultimate decision to deny Defendant's Motion to extend the fact discovery deadline to depose Mr. Harned. Rule 26(b)(1) states that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ., considering the . . . importance of the discovery in resolving the issues[.]" Here, the Court finds that Mr. Harned's deposition bears little importance to analyzing the issue of lost profits in light of the financial documents already provided by Plaintiffs and those compelled by the Court's Opinion and accompanying Order.

As Plaintiffs point out, Mr. Harned was only an employee of Plaintiffs' business until 2018, while the injury that Plaintiffs allege resulted in lost profits occurred in 2022. Thus, any loss in profit that resulted from Plaintiffs' injury would have occurred four years after Mr. Harned left Plaintiffs' employ. If, as Defendants claim, Mr. Harned would testify that "most, if not all, of the [P]laintiffs' business accounts which were lost due to the fall were in fact lost prior to [P]laintiffs' fall[,]" the Court finds that this allegation would be sufficiently reflected in Plaintiffs' business's financial documents.

This brings the Court to Rule 26(b)(2)(C)(i), which directs the Court to "limit the . . . extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source[.]" The Court finds that Mr. Harned's testimony, as described by Defendants themselves, would be both cumulative of and more readily obtained from the financial documents regarding Plaintiffs' business.

In sum, any testimony Mr. Harned would provide would either lack importance—due to the significant gap between his employment and Mrs. Tracey's fall—or be cumulative of what has been and will be shown through Plaintiffs' business's financial documents. The Court will therefore deny Defendant's Emergency Motion for Extension of Time to Complete Discovery, insofar as it requests an extension of the fact discovery deadline to depose Mr. Harned.

**C.     Plaintiffs' Motion to Compel Production of Responses to Requests for Documents at ECF No. 36**

Plaintiffs' Motion at ECF No. 36 seeks to compel Defendants' responses to two sets of discovery requests Plaintiffs served upon Defendants before the close of discovery in August 2023. (ECF No. 36 at 2).[10] Plaintiffs' first request seeks real estate documents relating to Defendants' efforts to sell 1621 Outer Drive,[11] going back two years prior to the transaction between Plaintiffs and Defendants. (ECF No. 43 at 15).

---

[10] The Court notes that Plaintiffs have not provided the Court with a copy of the requests they served upon Defendants, as Defendants did with respect to their Motion to Compel. Accordingly, the Court bases its explanation of what discovery Plaintiffs seek on (1) the brief description provided in Plaintiffs' Motion and (2) Plaintiffs' representations at oral argument.

[11] Although Defendants objected to Plaintiffs' alleged request for documents related to Defendants' attempts to sell other properties besides 1621 Outer Drive, Plaintiffs clarified at oral argument that they are only seeking documents with respect to that property and conceded that they would not be entitled to discovery regarding other properties. (ECF No. 43 at 23–24).

According to Plaintiffs, these requests sought items like disclosure statements regarding the conditions of the property and listing agreements. (*Id.*). At oral argument, Plaintiffs clarified that they sought these documents with respect to the transaction between the parties as well as the Defendants' subsequent sale of 1621 Outer Drive to a non-party. (*Id.* at 17). Prior to oral argument, Defendants objected to all twelve of Plaintiffs' requests, claiming they were overbroad and not likely to lead to admissible evidence. (*Id.* at 16).

Plaintiffs' second request seeks two items of discovery: (1) footage from Defendants' Ring doorbell at 1621 Outer Drive, and (2) "cellphone records and emails from [] Defendants for the day of [Mrs. Tracey's] fall and some emails from Mrs. Fabian for several days thereafter." (ECF No. 43 at 17–18). Plaintiffs explained that although they visited 1621 Outer Drive on two occasions—June 24 and June 27, 2023—Defendants only provided them with a "snippet" of the Ring doorbell footage showing Plaintiffs entering the premises on June 27, 2023. (*Id.* at 17). Plaintiffs seek to compel Defendants to produce the full video for both days. (*Id.* at 18). Plaintiffs did not substantively elaborate on their request for Defendants' cellphone records and emails at oral argument.

### 1.    Issues Resolved at Oral Argument or Through Responsive Pleadings

With respect to Plaintiffs' first request for real estate documents, Plaintiffs explained at oral argument that the "closing file" regarding 1621 Outer Drive would likely "contain the bulk of the documents [] requested." (ECF No. 43 at 16). At oral argument, Defendants indicated their willingness to (1) subpoena their real estate agent for the file regarding the transaction between the parties and (2) provide Plaintiffs with the seller disclosure form from the subsequent sale. (*Id.*

at 22). However, Defendants maintained their objection to providing documents regarding the "rest of the . . . subsequent transaction[.]" (*Id.* at 23).

But Defendants changed course in their response to Plaintiffs' Motion to Compel, which was filed three days after oral argument. (ECF No. 40). There, Defendants explained that "although [they] still maintain that the entire real estate file for the *ultimate sale* of this property is not relevant to this case, [D]efendants will work to subpoena this file from the Fabians' real estate agent[,]" which Defendants also believe contains most of the documents Plaintiffs requested. (*Id.* at 2) (emphasis added). Accordingly, because Defendants have agreed to subpoena the closing file—which both parties agree should contain the documents Plaintiffs request—the Court will deny without prejudice Plaintiffs' request to compel real estate documents as moot.

Turning to Plaintiffs' second request seeking the full Ring doorbell footage from June 24 and June 27, 2023, Defendants explained at oral argument that they have given Plaintiffs "all the Ring video [they] have." (ECF No. 43 at 20). According to Defendants, Mrs. Fabian took it upon herself to download the snippet provided to Plaintiffs from June 24, 2023. (*Id.* at 21). But because Ring doorbell footage is automatically deleted after a certain amount of time, Defendants claim they no longer have access to the full footage. (*Id.*).

However, Defendants explained that they are "perfectly willing" to "serve a subpoena on Ring" requesting the rest of the footage from June 24 and June 27, 2023. (*Id.* at 20–21). Thus, insofar as Plaintiffs' Motion at ECF No. 36 seeks to compel the production of Ring doorbell footage, the

Court will deny that request without prejudice as moot pursuant to Defendant's agreement to subpoena Ring.[12]

Finally, in their response to Plaintiffs' Motion to Compel, Defendants asserted that, with respect to "several" of Plaintiffs' requests for documents, "Defendants simply are not in possession of any documents responsive to these requests." (ECF No. 40 at 3). Because the Court cannot compel production of items not in Defendants' possession or control, Plaintiffs' Motion to Compel—to the extent it seeks those documents not in Defendants' possession—is denied. *See Harris v. Koenig*, 271 F.R.D. 356, 371 (D.D.C. 2010) ("Lack of evidence showing that producing party is in fact in possession of a document is grounds to deny a motion to compel.") (citation omitted); *see also* Fed. R. Civ. P. 34(a)(1) (explaining that parties must only produce documents that are "in the responding party's possession, custody, or control").

### 2.    Remaining Issue and Analysis

With Defendants agreeing to subpoena the closing file and Ring doorbell footage, the only issue remaining for the Court's resolution with respect to Plaintiffs' Motion to Compel is Plaintiffs' request for cellphone records and emails from Defendants for the day of Mrs. Tracey's fall and emails from Mrs. Fabian for several days thereafter. (ECF No. 43 at 18).

Plaintiffs contend that these communications "could contain descriptions, [and/or] depictions as to conditions of the property that are at issue with regard to our claim." (ECF No. 43 at 24). Defendants, for their part, argue that their cellphone records and emails are irrelevant

---

[12] With respect to Plaintiffs' argument insinuating that it would be unfair to rely upon only a snippet of the Ring doorbell footage, the Court notes that, in the event Ring is unable to produce the full video, Plaintiffs' argument on this score would be best addressed under Federal Rule of Evidence 403 through a Motion in Limine, if necessary.

because the issues in this case are "very narrowly constrained to performance under the terms of the contract[,]" and Plaintiffs' request bears no relation to these issues. (ECF No. 43 at 19–20).

The Court finds that Plaintiffs' limited request for cellphone records and emails for the day of Mrs. Tracey's fall and emails from Mrs. Fabian for several days thereafter is both relevant and reasonable in scope. Presumably, Plaintiffs only seek communications that involve the subject property and/or incident.[13] Such communications could shed light on any representations Defendants made with respect to the property conditions that are central to Plaintiffs' claims— namely, the condition of the stairs upon which Mrs. Tracey fell. And this request is sufficiently limited in scope to not be overly burdensome or intrusive.[14]

Accordingly, the Court will grant Plaintiffs' Motion to Compel insofar is Plaintiffs request cellphone records and emails—that are relevant to either the subject property or Plaintiffs' injury—for the day of Mrs. Tracey's fall, as well as emails from Mrs. Fabian for several days thereafter. Defendants shall produce such records to the extent they are able.

### D.      Expenses and Attorney's Fees

Pursuant to the Federal Rules of Civil Procedure, if a motion to compel is granted, subject to certain exceptions, "the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct,

---

[13] To the extent Plaintiffs' request is any broader, the Court clarifies that Defendants are only required to produce communications that are relevant to the subject property or Defendants' visit to that property.

[14] Defendants represented at oral argument that Plaintiffs "asked for cellphone and text messages regarding any house that the [Defendants] have sold to anyone going before or after this loss[.]" (ECF No. 43 at 19). Plaintiffs did not appear to elaborate on whether this request was included in their initial requests to Defendants, and Plaintiffs did not make any argument regarding this broader request. To the extent this broader request for communications is contained in Plaintiffs' Motion to Compel, the Court denies the Motion with respect to that request. The Court finds that such a request would lack relevance and be overly burdensome. And Plaintiffs have failed to articulate how this broad request is relevant to their claims.

or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

If the motion to compel is denied, the Court "*must*, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B) (emphasis added).

However, "[i]f the motion is granted in part and denied in part, the court . . . *may*, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C) (emphasis added). Here, the Court has granted in part and denied in part both Defendants' Motion to Compel at ECF No. 30 and Plaintiffs' Motion to Compel at ECF No. 36. Thus, whether to apportion reasonable expenses or award attorney's fees is vested in the Court's discretion.

Here, because the Court grants in part and denies in part each party's respective Motions to Compel, the Court will not apportion costs or award either party attorney's fees. *See, e.g., Zaloga v. Borough of Moosic*, No. 3:10-CV-2604, 2012 WL 1899665, at *16 (M.D. Pa. May 24, 2012) (declining to award attorney's fees "[b]ecause the Court is granting Plaintiffs' Cross-Motion to Compel in part and denying it in part").

## IV.    Conclusion

For the foregoing reasons: (1) Defendants' Motion to Compel at ECF No. 30 is **GRANTED IN PART** and **DENIED IN PART**, as specified in the following Order; (2) Defendants' Emergency Motion for Extension of Time to Complete Discovery at ECF No. 32 is **GRANTED IN PART** and

**DENIED IN PART**, as specified in the following Order; and (3) Plaintiffs' Motion to Compel at

ECF No. 36 is **GRANTED IN PART** and **DENIED IN PART**, as specified in the following Order.

A corresponding Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SINDI R. TRACEY and MICHAEL L. TRACEY, | ) | Case No. 3:22-cv-189 |
| | ) | |
| Plaintiffs, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT FABIAN and KELLY FABIAN, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 15th day of February, 2024, upon consideration of (1) Defendants' Motion to Compel Plaintiffs' Discovery Responses, (ECF No. 30), (2) Defendants' Emergency Motion for Extension of Time to Complete Discovery, (ECF No. 32), and (3) Plaintiffs' Motion to Compel Production of Responses to Requests for Documents, (ECF No. 36), **IT IS HEREBY ORDERED** that said Motions are **GRANTED IN PART** and **DENIED IN PART**, as follows:

(1) With respect to Defendants' Motion to Compel at ECF No. 30:

    a. Defendants' Motion is **DENIED** with respect to Request No. 1, which sought, among other things, copies of any and all bank statements for any accounts maintained by Plaintiffs.

    b. Defendants' Motion is **GRANTED** with respect to Request No. 2 to the extent Defendants seek profit and loss statements, income statements, financial statements, and balance sheets, going back seven years. Plaintiffs shall produce such documents, or state on record that they are not in possession of such

documents, **within 28 days from the entry of this Order**. Defendants' Motion is **DENIED** insofar as Request No. 2 seeks reports of expenditures, books of account, loan applications, and/or similar documents.

c.  Defendants' Motion is **DENIED WITHOUT PREJUDICE** with respect to Request No. 3, which sought all documents related to all liabilities of Plaintiffs.

d.  Defendants' Motion is **DENIED WITHOUT PREJUDICE** with respect to Request No. 4, which sought all documents relating to all assets owned by Plaintiffs.

e.  Defendants' Motion is **DENIED** with respect to Request No. 5, which sought any and all documents relating to the transfer of any assets or monies from Plaintiffs to any other person or entity.

f.  Defendants' Motion is **GRANTED IN PART** with respect to Request No. 6 to the extent Defendants seek Plaintiffs' personal and business tax returns dating back seven years; Plaintiffs are directed to redact their personal tax returns to only include information regarding Plaintiffs' income, wages, and information relevant to Plaintiffs' business. Plaintiffs shall produce such documents, or state on record that they are not in possession of such documents, **within 28 days from the entry of this Order**.

g.  Defendants' Motion is **DENIED IN PART WITHOUT PREJUDICE** with respect to Request No. 6 to the extent Defendants seek the entirety of Plaintiffs' personal tax returns without redaction.

(2) With respect to Defendants' Emergency Motion for Extension of Time to Complete

Discovery at ECF No. 32:

    a.  Defendants' Motion is **GRANTED** to the extent it requests a ninety-day

        extension of the expert discovery deadlines. Defendants shall produce their

        export report, and Plaintiffs may file any supplemental export report, **within 90**

        **days from the entry of this Order.**

    b.  Defendants' Motion is **DENIED** to the extent it requests an extension of the fact

        discovery deadline to depose Mr. Harned.

(3) With respect to Plaintiffs' Motion to Compel Production of Responses to Requests for

Documents at ECF No. 36:

    a.  Plaintiffs' Motion is **DENIED WITHOUT PREJUDICE AS MOOT** to the extent

        it requests real estate documents, considering Defendants' representation that

        they will subpoena the closing file, which the parties agreed would contain the

        bulk of the documents requested.

    b.  Plaintiffs' Motion is **DENIED WITHOUT PREJUDICE AS MOOT** to the extent

        it requests Ring doorbell video footage, considering Defendants' representation

        that they will subpoena Ring for the entirety of the footage requested.

    c.  Plaintiffs' Motion is **DENIED** to the extent it requests documents that

        Defendants have asserted on record they do not possess.

    d.  Plaintiffs' Motion is **GRANTED** to the extent it requests cellphone records and

        emails from Defendants for the day of Mrs. Tracey's fall and emails from Mrs.

        Fabian for several days thereafter—so long as they are regarding the subject

property or incident. Defendants shall produce such documents, or state on record that they are not in possession of such documents, **within 28 days of the entry of this Order.**

e. Plaintiffs' Motion is **DENIED** to the extent it requests a broader set of cellphone records, emails, and/or other communications from Defendants.

**IT IS FURTHER ORDERED** that the parties shall advise the Court as to when a post-discovery status conference is necessary. Once the Court is advised of the need for such a conference, the Court will schedule a telephonic post-discovery status conference accordingly.


**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**